UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| SEAN GEAGAN | CIVIL ACTION NO. 6:18-CV-00078 |
| VS. | SECTION P |
| | UNASSIGNED DISTRICT JUDGE |
| MICHAEL COUVILLON, ET AL | MAGISTRATE JUDGE PATRICK J. HANNA |

## REPORT AND RECOMMENDATION

Pro se complainant Sean Geagan, a pre-trial detainee in the custody of the Louisiana Department of Corrections, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 22, 2018.  Plaintiff is currently incarcerated at the Vermilion Parish Jail (VPJ).  He names the following as defendants: Michael Couvillon, Kirk Frith, Lisa Stewart, Police Jury of Vermilion Parish, Vermilion Parish Correctional Center, Miriam Hutchinson, Anthony Klorer, Brandon Stoutes, Blair Breaux, Jacob Lebouef, Brock Savoy, Manuel Suire, Robert Casterline, Shaisely Charles and Trevor Touchet.  He seeks compensatory damages and injunctive relief.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Statement of the Case*

Plaintiff Sean Geagen filed the instant complaint alleging three separate violations of his constitutional rights.  First, he alleges inadequate medical care and medical malpractice.  Next, he complains of inhumane living conditions.  Finally, he complains of a "serious breach of procedure" with respect to the handling of a meal on one occasion.

## 1. *Medical Claims*

With respect to his medical care, plaintiff contends that he has been forced to live with constant, excessive, extensive pain and suffering since his intake at VPJ on February 20, 2017. On February 22, 2017, his unknown medical condition was documented by Nurse Lisa Stewart. On March 6, 2017, he began sending "requests" due to "ongoing pain, soreness, drainage and [his] condition worsening." [Rec. Doc. 4, p. 6] On June 6, 2017, plaintiff filed his first grievance due to "constant pain since intake." *Id.*

On or about June 29, 2017, plaintiff was seen by Dr. Miriam Hutchinson, who prescribed medication and a pain reliever. *Id.* On July 17, 2017, his grievance was answered by Sgt. Bryan Kibodeaux stating, "something was be (sic) done now." *Id.* On July 28, 2017, he was given a second round of medication. On August 18, 2017, "all medication ends, pain is still present." *Id.*

On September 13, 2017, after sending multiple medical requests, plaintiff was brought to the Emergency Room at University Hospital and Clinic in Lafayette (UHC). He was diagnosed with a "completely different disease than what was thought" by the medical staff at VPJ. *Id.* The ER physician recommended surgery and explained that the antibiotics previously prescribed would not help. He was given a minor pain reliever and sent back to VPJ.

On October 19, 2017, plaintiff filed another grievance, as he felt "nothing was being done as 90 days have went by since the first grievance." *Id.* On October 24, 2107, he started to receive minor pain relieving medication. On November 18, 2017, he requested a warden's review written on a statement form, as his October 19, 2017 grievance had not been answered. On November 20, 2017, he spoke with Captain Troy Hebert and the nurse about his grievance. On November 22, 2017, he received a response stating that his grievance was a duplicate of the one filed in June 2017.

He re-filed on November 24, 2017, and continued to inquire about his grievance for the following month.

On January 4, 2018, plaintiff received a surgical consult at UHC.

He inquired with the nurse about his grievance again on January 16, 2017, who informed him that as his appointment was scheduled, he should drop his grievance; he declined. On January 22, 2018, he wrote a second request for warden's review of his grievance. On January 31, 2018, he received a response from Lt. William Vincent stating that his grievances were frivolous and unfounded.

On February 1, 2018, he filed an appeal. On that same day, he attended a pre-operative appointment at UHC.

Surgery was performed on February 5, 2018 at UHC.

## 2. Conditions of Confinement

Next, plaintiff alleges that he was forced to endure "inhumane living conditions on lock down tier known as B-East on 10-25-17 and again on 10-27-17." *Id.* at p. 8. On October 25, 2017 and again on October 27, 2017, the toilet system backed up, flooding the tier. The toilets were turned off for seven (7) hours while the area was cleaned. Plaintiff filed a grievance on October 28, 2017, which has not yet been answered.

## 3. Food Allergies

Finally, plaintiff complains that there was a "serious breach of procedure" relating to his food service, causing him to have an allergy flare up. Plaintiff informed Nurse Stewart on February 22, 2017, of his food allergies. On or about March 6, 2017, plaintiff had an allergic reaction to a meal. Thereafter, he was given a special diet and his food was placed on a special tray.

On January 14, 2018, he experienced an allergy flare which caused his tongue to swell. Following an investigation, it was determined that cross-contamination occurred when an inmate cook used the same spoon used to handle food prepared for general population to handle plaintiff's special meal.   That evening, he returned to his tier and his allergic reaction subsided.   He subsequently filed a grievance against Deputy Daniel Simon, the kitchen cook.   At lunch the following day, when asked if his food was safe an inmate cook replied to plaintiff, "it is today, don't know about tomorrow." *Id.* at p. 10. Sgt. Kibodeaux was told about the comment and that cook was removed.  He was also told that the procedure was updated for cooks and shift sergeants.  Plaintiff, not satisfied with the prison's response, has proceeded to Step 3 in the grievance process and, as of the filing of this suit, has not received further communication regarding this situation.

### *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity; therefore his  complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam).  Section 1915A(b) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### 2. Grievances

Plaintiff complains that his grievances, filed in each of the instances made the subject of the instant complaint, were not resolved satisfactorily. However, Plaintiff does not have a federally-protected right to have grievances investigated and resolved. *See Sandin v. Conner*, 515 U.S. 472 (1995); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (no federally protected liberty interest in having grievances resolved to their satisfaction). Since the Constitution does not provide a right to a prison grievance procedure, any alleged failure to investigate and resolve plaintiff's grievances is without merit.

### 3. Medical Care

Plaintiff is a pre-trial detainee, currently in custody of the Louisiana Department of Corrections.  Pre-trial detainees possess a constitutional right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534-37 (1979). The standard applied to a medical care claim asserted by a pretrial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (quoting Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir. 1996)). Under the "episodic act" standard, which would be applicable in this case, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." Thus, a plaintiff must show that he suffered a sufficiently serious deprivation and deliberate indifference by prison officials. *See Hare,* 74 F.3d at 643, 650.

"Deliberate indifference encompasses only unnecessary and wanton infliction of pain

repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). Deliberate indifference occurs when a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837-840 (1994).

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti*, 958 F.2d. 91 (5th Cir. 1992).

Plaintiff's complaints have not been ignored, and there are no allegations to support a finding that the defendants acted with deliberate indifference to a serious medical need. Plaintiff received medical care on June 29, 2017, July 28, 2017, September 13, 2017, October 24, 2017, January 4, 2018, February 1, 2018, and finally, a surgery on February 5, 2018.

Plaintiff began receiving medication in June 2017. The fact that the ER doctor ultimately opined that the medication was not resolving the issue does not constitute deliberate indifference. *See e.g., Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a § 1983 claim). Plaintiff's disagreement with his diagnosis or treatment does not state a constitutional claim. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995);

*Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Plaintiff does not allege that the defendants purposefully gave him improper treatment, ignored his medical complaints, "or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Accordingly, he fails to state a claim upon which relief may be granted.

**4.     *Conditions of Confinement***

Plaintiff complains of two incidents in which the toilet in his dorm overflowed, causing "feces, urine and other foreign objects" to flood the tier. [Rec. Doc. 4, p. 8] "The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences. *Tate v. Gusman*, 2015 U.S. Dist. LEXIS 146809, *5 (E.D. La. 2015). Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. *Id.* at *6 (citing *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979); *Ruiz v. El Paso Processing Center*, 299 Fed. App'x 369, 371 (5th Cir. 2008). It is apparent that the physical conditions at the jail alleged by plaintiff, while unpleasant, concern nothing more than *de minimis* inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

Although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." *Id*. (quoting *McAllister v. Strain*, Civ. Action No. 09-2823, 2009 U.S. Dist. LEXIS 120101, 2009 WL

5178316, at *3 (E.D. La. Dec. 23, 2009); accord *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."). Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); accord *Hernandez v. Velasquez*. 522 F.3d 556, 560 (5th Cir. 2008). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)); accord *Benshoof v. Layton*, 351 Fed. Appx. 274, 2009 WL 3438004, at *4 (10th Cir. 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004).

Plaintiff's allegations about the conditions at the jail do not establish constitutional violations. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998)(no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 U.S. Dist. LEXIS 20651, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215; *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

Plaintiff alleges no serious risk or harm in the constitutional sense. In fact, he does not allege any injury as a result of these isolated incidents. Under these circumstances, plaintiff has failed to state a claim of constitutional magnitude, and his claim concerning the conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

**5.  *Food Allergy Incident***

Finally, plaintiff complains that there was a "serious breach of procedure" relating to his food service, causing his allergies to flare  The isolated incident complained of in the instant complaint occurred when an inmate used the spoon from the main dish in plaintiff's special dish. Plaintiff's tongue swelled up and approximately two hours later, he was able to return to his tier, as the reaction subsided. Plaintiff alleges no serious harm or injury as a result. He was later assured that the matter was investigated and kitchen procedures were changed to ensure this type of situation would not occur again.

Plaintiff's allegations do not rise to a level of seriousness constituting a constitutional violation. Certainly, food and water must be provided to prisoners. States violate the Constitution if they fail to provide prisoners with reasonably adequate food, water, clothing, shelter and sanitation. *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Farmer*, 511 U.S. at 832). Constitutional standards require only that prison authorities provide an inmate with the basics in this regard, including "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (*quoting Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)). Plaintiff's assertion that he was given a special diet tray indicates that there has been an attempt to address his apparent food allergy and undermines his claim of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mendoza v. Lynaugh*, 989 F.2d 191,

193-95 (5th Cir. 1993).    At the most, plaintiff's allegations indicate that the kitchen staff was negligent in using the same utensil to handle the food prepared for the general population and plaintiff's special meal.  Occasional lapses in the food service do not support a claim that the prisoner's conditions of confinement  are constitutionally deficient.  *Duvall v. Dallas County, Tex.,* 631 F.3d 203, 208 (5th Cir. 2011) (citing *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir.2009)).  Moreover, plaintiff has failed to allege any long term physical effect from being served the contaminated tray on one occasion. Without such showing, he cannot show that he was subjected to cruel and unusual punishment.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United***

*Services Automobile Association*, **79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Lafayette, Louisiana March 22, 2018.

_____

**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**